**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **JOVITA DUNCAN** | § | **CAUSE NO.** |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **7:16-cv-00397** |
| | § | |
| **RELATED MANAGEMENT COMPANY, LP** | § | |
| **DEFENDANT.** | § | **JURY DEMANDED** |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**Plaintiff JOVITA DUNCAN ("Plaintiff")** files this Complaint and would respectfully show the Court as follows:

### PARTIES

1.    Plaintiff is an individual who presently resides in Summit County, Ohio. She formerly resided in Midland County, Texas.

2.    **Defendant RELATED MANAGEMENT COMPANY, LP ("Defendant")** is a New York limited partnership with its principal place of business in New York City, New York. Defendant may be serviced with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

### JURISDICTION AND VENUE

3.    Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3).

---

PLAINTIFF'S COMPLAINT                                                                    PAGE 1

4.      Venue is proper in the U.S. District Court for the Western District of Texas, Midland-Odessa Division pursuant to 28 U.S.C. §1391(b) because the unlawful practices alleged below were committed therein.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

5.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Plaintiff files this suit within (90) days of receiving a Notice of Right to Sue from the EEOC, a true and correct copy of which is attached hereto as Exhibit A.

## CONDITIONS PRECEDENT

6.      All conditions precedent have been performed or have occurred.

## FACTS

7.      Defendant is a subsidiary of Related Companies, LP ("Related") which is a highly prominent privately-owned real estate firm in the United States.  Related is a fully-integrated, highly diversified industry leader with experience in virtually every aspect of development, acquisitions, management, finance, marketing and sales.

8.      In 2014, Defendant acquired a portfolio of twenty-one multi-family apartment properties, including 3,000 apartment units in Midland and Odessa, Texas.

9.      Plaintiff is a black, African-American female.  She has an associate degree in HVAC-R which stands for Heating, Ventilation, Air Conditioning, and Refrigeration.  Industrial and commercial HVAC-R systems include such components as air ducts, piping, vents and thermostats.  HVAC-R technicians are responsible for installing and maintaining these systems and ensuring that each part functions correctly.

**Plaintiff's Employment**

10.     In October 2015, Plaintiff was hired by Defendant as a HVAC-R Maintenance Technician for their Brighton, Enclave, and Signature (BES) Apartment properties. As an HVAC-R Maintenance Technician Plaintiff was to maintain and repair the heating and cooling systems.

11.     When Plaintiff first started, she received her job instructions from the BES Property Manager Amber Perry because at the time BES did not have a supervisor. Paul Almquist had been hired as the BES Supervisor but did not start working until the beginning of November.

12.     Perry gave Plaintiff the title Assistant Supervisor.

13.     In addition to her duties as HVAC-R Maintenance Technician, Perry also asked Plaintiff to help "make-ready" the apartments for the new tenants. This included, but was not limited to, making sure the light fixtures, plumbing, electrical and appliances were in good repair.

14.     Plaintiff was part of the Maintenance Team which included Evan McBee (white male), non-HVAC-R Maintenance Technician, and Roy Johnson (black male), Groundsman.

15.     After Paul Almquist started, he became Plaintiff's supervisor. Plaintiff started to receive job instructions and assignments from Almquist. Perry also continued to give Plaintiff job instructions and assignments.

**Discrimination and Harassment**

16.     Perry made frequent offensive racial comments to Plaintiff.

17.     Perry told Plaintiff that she did not want to hire any more black people because "you guys are going to start scaring the residents."

18.     Perry told Plaintiff that "Amber" is a "white girl name," and made comments to Plaintiff that she has a "white side," and her "black side" came out on a resident. Perry is bi-racial or multi-racial.

---

19.    Perry told Plaintiff and co-worker Roy Johnson that they could not go through the front door of the leasing office, that they had to go through the back door "like back in slavery."

20.    Plaintiff complained to Perry about the comments.  Afterwards, Plaintiff felt like Perry was trying to get rid of her.

21.    Perry started assigning Plaintiff jobs that required two people to be safe.

22.    Perry made comments about the fact the Plaintiff is female and that she could not do certain jobs because they were for men.

23.    On one particular incident, Plaintiff was replacing a ceiling fan for an apartment upgrade.  The apartment had a cathedral (i.e., vaulted) ceiling which required a taller ladder. Plaintiff asked Ms. Perry for assistance, specifically for someone to hold the ladder, because the ladder was not tall enough and Plaintiff is only 5'2".  Perry told Plaintiff that she is supposed to be able to take down a ceiling fan on her own and that if it is too heavy because she is not strong enough as a female then she would have to call corporate to see what the weight limit is and bet back to her once she found out about OSHA.  Plaintiff told Perry that she would try and do it by herself, and she dropped the ceiling fan.

24.    In the apartments without cathedral ceilings, Plaintiff was able to change the ceiling fans easily on her own.  Plaintiff felt like Perry was giving her tasks she knew she could not do on her own or in a timely manner in order to harass her and/or get her fired.

25.    On another incident, Plaintiff was replacing faucets for the first time.  It was difficult and taking a long time because the faucets were old and rusted.  Maintenance Supervisor Paul Almquist came over to help Plaintiff.  He also had a hard time removing the faucets.  Perry asked Plaintiff if she needed training in order to do her job.  Plaintiff did not respond and was upset

that Perry was questioning her performance and ability over something she knew how to do, was extremely difficult and that even Almquist had trouble doing.

26.     On or about December 2, 2015, Plaintiff was the on-call technician and had to respond to an emergency call concerning a heater, specifically a valve needed to be replaced. She had trouble finding the right valve and called Almquist who told her where to find it. Plaintiff successfully replaced the valve and informed Almquist that the heater was old and needed more work than just the valve. She requested that he check out the water heater the next morning to make sure everything was in place correctly. Plaintiff did not receive any complaints or hear otherwise regarding the heater. It took her about two hours to fix the heater.

27.     That same day, Plaintiff and another technician Evan McBee were trying to complete a make-ready for another apartment. Perry and Almquist approved overtime to finish the job. Plaintiff was to replace the faucets and McBee was to put up the blinds and ceiling fans. They were both supposed to fix the door knobs. They worked on the unit from about 3pm until 7am the next morning.

28.     During that time, Plaintiff had to resolve the heater issue previously mentioned while McBee was to keep working on the unit.

29.     The next morning, Perry saw that the blinds had not been finished and blamed Plaintiff, not McBee, for the blinds not being completed.

30.     A few days later, while Plaintiff was doing a make-ready, she told Perry that the bathtub needed resurfacing. Perry told her to spray CLR (Calcium, Lime & Rust Remover) on the tile. Plaintiff used the CLR but it was not completely effective. Plaintiff told Perry that she believed the bathtub should still be resurfaced. Perry tried to clean the bathtub also, but with a different cleaning product. The bathtub still looked almost the same.

31.    Cleaning bathtubs was not Plaintiff's job.

## Plaintiff's Termination

32.    On or about December 10, 2015, Plaintiff was fired.  Perry told Plaintiff she was being terminated because she did not use the CLR to clean the bathtub.

33.    On or about January 7, 2016, Plaintiff received a letter about renewing her lease. Plaintiff was a tenant with Defendant at the Signature Place apartments.  Her lease was to expire on or about March 6, 2016.  Plaintiff talked to Katheryn [last name unknown], who assists with leasing, and told her she was having issues with the plumbing and not sure if she wanted to renew the lease.  Kathryn said she had plenty of time.

34.    The next day, Plaintiff received an eviction notice signed by Amber Perry.  The notice stated that she was to vacate the dwelling on or before midnight on January 11, 2016.

35.    On or about January 9, 2016, Plaintiff told Perry that she was not going to renew her lease and that she would need a couple of days to move out.  Perry told her to drop off the keys when she finished.

36.    On or about January 12, 2016, Plaintiff was finishing moving out.  She was taking her daughter to school when her former co-worker Roy Johnson called and told her that the plumbers were breaking in/busting the locks on her apartment.  Plaintiff called the police.  When she got back, her former supervisor Mike Almquist told her that Perry said Plaintiff had moved out and to just bust the locks.  The police showed up and told Perry to give Plaintiff a couple of days to finish moving out.

37.    Plaintiff moved out on or about January 15, 2016.

38.    On or about July 29, 2016, Plaintiff received a letter from National Credit Systems, Inc. that she had an outstanding debt with Defendant.  Plaintiff had paid all her rent and there

should not be a debt.  Defendant never informed Plaintiff of any outstanding debt.  This debt has negatively affected Plaintiff's credit score.

COUNT ONE – RACE DISCRIMINATION (TITLE VII)

39.    Plaintiff incorporates and re-alleges all of the foregoing and further alleges as follows:

40.    Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is black/African-American.  *See* 42 U.S.C. §2000e(f).

41.    Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

42.    Defendant intentionally discriminated against Plaintiff by terminating her employment based on her race.

43.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

44.    To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's race was motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

COUNT TWO – SEX DISCRIMINATION (TITLE VII)

45.    Plaintiff incorporates and re-alleges all of the foregoing and further alleges as follows:

46.    Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female.  *See* 42 U.S.C. §2000e(f).

47.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

48.     Defendant intentionally discriminated against Plaintiff by denying terminating her employment based on her sex.

49.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

50.     To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's sex was motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

COUNT THREE – TITLE VII – RACE RETALIATION

51.     Plaintiff incorporates and re-alleges all of the foregoing and further alleges as follows:

52.     Plaintiff is an employee within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

53.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

54.     Defendant retaliated against Plaintiff by terminating her employment in violation of Title VII, 42 U.S.C. §2000e-3(a).

55.     Plaintiff engaged in protected activity when she complained to Defendant of a hostile work environment because of her race.

56.     Defendant terminated Plaintiff's employment because of her complaints of race discrimination, including but not limited to a hostile work environment.

57.    To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's protected activity was a motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

58.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

### COUNT FOUR – TITLE VII – SEX RETALIATION

59.    Plaintiff incorporates and re-alleges all of the foregoing and further alleges as follows:

60.    Plaintiff is an employee within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

61.    Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

62.    Defendant retaliated against Plaintiff by terminating her employment in violation of Title VII, 42 U.S.C. §2000e-3(a).

63.    Plaintiff complained to Defendant of a hostile work environment because of her sex.

64.    Defendant terminated Plaintiff's employment because of her complaints of sex discrimination, including but not limited to a hostile work environment.

65.    To the extent that Defendant contends that Plaintiff was a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's protected

activity was a motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

66.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

COUNT FIVE – HOSTILE WORK ENVIRONMENT

67.     Plaintiff incorporates and re-alleges all of the foregoing and further alleges as follows:

68.     Plaintiff is an employee within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

69.     Defendant is an employer within the meaning of Title VII.  42 U.S.C. §2000e(b).

70.     Plaintiff was subjected to a hostile work environment harassment based on her race and/or sex.  Defendant knew or should have known about the harassment and failed to prevent and/or correct it.

71.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

COUNT SIX – VIOLATION OF 42 U.S.C. §1981

72.     Plaintiff incorporates and re-alleges all of the foregoing and further alleges as follows:

73.     Defendant is liable because of its violation of 42 U.S.C. §1981 by not providing Plaintiff her equal rights as provided under the Civil Rights Act of 1866.

74.     Defendant discriminated against Plaintiff on the basis of her race including but not limited to terminating Plaintiff's employment.

## DAMAGES

75.    Plaintiff was discharged from employment by Defendant.  Although she has diligently sought other employment, she has been unable to find a job with comparable pay and benefits.  In addition, Plaintiff has incurred expenses in seeking other employment.  Plaintiff suffered damage to her pension or retirement benefits.  Plaintiff seeks compensation for all back pay and lost wages and benefits, including loss of Social Security benefits.  Reinstatement to Plaintiff's previous position is impractical and unworkable.  Therefore, Plaintiff seeks an award of front pay and future lost wages and benefits.  Plaintiff suffered mental anguish and emotional distress.  Defendant's conduct, including but not limited to evicting her and placing negative information in her credit report, is intentional and egregious, justifying an award of punitive or exemplary damages.

## ATTORNEY'S FEES

76.    Plaintiff was forced to engage counsel to protect her rights.  Plaintiff is entitled to an award of attorney's fees and costs (including but not limited to an award of reasonable expert witness fees), both trial and appellate, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3).

## INTEREST

77.    Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

78.    Plaintiff demands a jury trial.

PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the following:

a.  Compensatory and punitive damages;

b.  Back pay and front pay;

c.  Attorneys' fees and costs;

d.  Prejudgment and post-judgment interest;

e.  Such other and further relief, at law or in equity, to which Plaintiff may show herself justly and lawfully entitled.

Respectfully submitted,

/s/ Holly B. Williams

By: _____

Holly B. Williams
Texas Bar No. 00788674
Naomi Cobb
Texas Bar No. 24094592

**WILLIAMS LAW FIRM, P.C.**
1209 W. Texas Avenue
Midland, TX 79701-6173
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com
naomi@williamslawpc.com

**ATTORNEYS FOR PLAINTIFF
JOVITA DUNCAN**

PLAINTIFF'S COMPLAINT                                                      PAGE 12

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Jovita Duncan<br>3206 Travis Ave<br>Midland, TX 79701 | From: | El Paso Area Office<br>300 E. Main Drive, Suite 500<br>El Paso, TX 79901 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 453-2016-00920 | Roxana La Motte<br>Investigator | (915) 534-4198 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Lucy Y. Orta,
Area Office Director

September 19, 2016
(Date Mailed)

Enclosures(s)

cc:
| David M. Katz<br>Vice President, Employment Counsel<br>RELATED MANAGEMENT COMPANY, LP<br>423 WEST 55TH STREET<br>New York, NY 10019 | Holly B. Williams<br>WILLIAMS LAW FIRM PC<br>1209 W TEXAS AVE<br>Midland, TX 79701 |
|---|---|



RECEIVED
SEP 2·2 2016
BY:_____

**EXHIBIT A**