# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| JOVITA DUNCAN, | § § § | CAUSE NO. |
| PLAINTIFF, | § § | |
| V. | § § | 7:16-cv-00397-DC |
| RELATED MANAGEMENT COMPANY, LP, | § § § | |
| DEFENDANT. | § | JURY DEMANDED |

## <u>CERTIFICATION OF ROBERT H. BERNSTEIN IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS</u>

ROBERT H. BERNSTEIN, of full age, hereby certifies as follows:

1. I have personal knowledge of the facts set forth in this Certification and, if called as a witness, would testify to such facts under oath.

2. I am an attorney licensed to practice in the United States District Court for the Western District of Texas. I am a shareholder in the law firm of Greenberg Traurig, LLP, based in its Florham Park, New Jersey office.

3. We represent Defendant Related Management Company, L.P. ("Related") in this lawsuit, and I have been the attorney of record since this litigation commenced in December 2016.

4. Greenberg Traurig charges Related hourly for our services on this case at a rate of $410.00 per service hour for Robert H. Bernstein, $355.00 for Noel A. Lesica, and $160.00 for paralegal Peter Vink. Ms. Lesica and I are the primary attorneys who performed almost all the legal work in this case, including representing Related at trial from November 13 to 16, 2018. These hourly fees are reasonable and necessary for the services performed, and are just and

equitable. To date, based on our fee agreement, Related has paid $201,025.68 in attorneys' fees, and owes an additional $98,974.32 in fees, for services rendered up to November 16, 2018, the date the jury returned a verdict in favor of Related.

5. All fees incurred were connected to our representation of Related in this case, including but not limited to, preparing an answer, meeting with various fact witnesses, engaging in discovery, responding to written discovery requests, preparing and opposing discovery-related motions, preparing for and conducting Plaintiff's deposition, preparing for and defending Amber Perry's deposition, preparing our motion for summary judgment, reviewing and responding to motions and pleadings filed by Plaintiff, including Plaintiff's motion to amend the Complaint, preparing for and attending mediation, preparing, reviewing and responding to pretrial submissions, preparing for and attending the pretrial conference, trial preparation and trial. Further, while Related has incurred fees exceeding $300,000, Related limits its request for an award of attorneys' fees to the amount of $300,000.

6. The fees we charged are less than those customarily charged in this area for the same or similar services by attorneys with our experience, reputation and ability and considering the nature of the controversy. Further, the fees and costs were reasonable and necessary to defend Related from the claims that Plaintiff asserted against it. Related and its counsel hereby reserve the right to amend this testimony and its claim for attorneys' fees in the future should any additional legal services be required in this matter.

7. Attached as Attachment 1 is a true and complete copy of the Charge of Discrimination that Plaintiff filed with the EEOC.

8. Attached as Attachment 2 is a true and complete copy of the Position Statement dated July 15, 2016 that Related submitted to the EEOC (excluding exhibits).

9. Attached as Attachment 3 is a true and complete copy of the Rebuttal dated August 19, 2016 that Plaintiff submitted to the EEOC.

10. Attached as Attachment 4 is a true and complete copy of the EEOC's September 19, 2016 cover letter to Plaintiff and Holly B. Williams enclosing its Dismissal and Notice of Rights.

Dated: December 11, 2018

/s/ *Robert H. Bernstein*
Robert H. Bernstein

Robert H. Bernstein
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
973-360-7900
973-301-8410 (fax)
bernsteinrob@gtlaw.com

**ATTACHMENT 1**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 453-2016-00920 |

Texas Workforce Commission Civil Rights Division and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Jovita Duncan | (818) 512-7826 | 01/08/1978 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3206 Travis Ave. | Midland, Texas 79701 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Related Management Company, LP <br> c/o Stephen M. Ross, Chairman and Founder | 500+ | (212) 319-1200 |

| Street Address | City, State and ZIP Code |
|---|---|
| 423 West 55th Street | New York, NY 10019 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 11/07/2015   Latest: 01/15/2016

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I worked as an HVAC Maintenance Technician for 3 apartment complexes in Midland, TX. I am black, and my coworker Roy Johnson is black. Property Manager Amber Perry made frequent offensive racial comments. For example, Amber said that she did not want to hire any more black people because "you guys are going to start scaring the residents." She said "Amber" is a "white girl name," and made comments that she has a "white side," and her "black side" came out on a resident. Amber said that we could not go through the front door of the leasing office, we had to go through the back door "like back in slavery." After I complained about the racial comments, I felt like Amber was trying to get rid of me. She started assigning jobs to me that required 2 people to be safe. She made comments about the fact that I am female and could not do certain jobs because they were for men. She fired me on 12/10/15. I was allowed reduced rent as a condition of employment. She evicted me approximately 1 month later.

II. Amber told me I was being let go because I didn't use the CLR (Calcium, Lime & Rust Remover) to clean the bathtub. I did use the CLR as instructed, but I told Amber the bathtub needed resurfacing.

III. I believe that I have been harassed and/or discriminated against based on my sex (female), race (black), and/or national origin (African-American), when I was subjected to a hostile work environment, retaliation, and termination in violation of Title VII of the Civil Rights Act of 1964, as amended, and/or Chapter 21 of the Texas Labor Code.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

X 6-2-16   K. [signature]
Date   Charging Party Signature

NOTARY — When necessary for State and Local Agency Requirements

[signature: Gina Michelle Ybarra]

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT
K. [signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year) 6/3/16

GINA MICHELLE YBARRA
Notary Public, State of Texas
Comm. Expires 05-18-2019
Notary ID 13023054-2

**ATTACHMENT 2**

# ■RELATED

July 15, 2016

**VIA ELECTRONIC FILING**

Norma Ruiz
U.S. Equal Employment Opportunity Commission
El Paso Area Office
300 East Main Drive, Suite 500
El Paso, TX 79901

*Re:*   *Jovita Duncan v. Related Management Company, L.P.*
        *EEOC Charge No. 453-2016-00920*

Dear Ms. Ruiz:

Please accept this letter as Respondent Related Management Company, L.P.'s ("RMC") Position Statement in response to Complainant Jovita Duncan's ("Complainant") Charge of Discrimination.

Complainant, an African-American female, alleges race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and/or Chapter 21 of the Texas Labor Code. As set forth more fully below, Complainant's Charge is meritless. RMC terminated Complainant's employment within her 90-day trial period because her brief tenure with RMC was littered with performance issues, characterized by an inability to work independently, and Complainant therefore failed to satisfactorily meet the requirements of her job during the probationary period.

## STATEMENT OF FACTS

RMC, one of the leading property management organizations, providing property management services to residential, mixed-use, retail and commercial properties, hired Complainant on October 12, 2015 as a Maintenance Technician at one of the properties in RMC's portfolio known as the Enclave in Midland, Texas. Complainant was responsible for repairs and maintenance work at the property, including work on HVAC systems. During her brief, *less than two-month* period of employment with RMC, Complainant reported to Amber Perry, Property Manager, who like Complainant is an African-American woman. Ms. Perry interviewed Complainant and participated in the decision to hire her.

RELATED MANAGEMENT · 423 West 55th Street, 9th Fl., New York, NY 10019 · (212) 319-1200 · (212) 702-9895 fax

As set forth in her offer letter dated October 8, 2015, Complainant was hired pursuant to a 90-day trial period. (The offer letter is attached hereto as **Exhibit A**.) On the subject trial periods, section 1-4 of RMC's employee handbook provides:

> If it develops that an employee is not the right choice for the position, we shall be frank with the individual and terminate employment as soon as we realize the problem. ... Note: No advance notice is required, and no separation pay will be given to employees terminated during the trial period. Periodically throughout the trial period, the immediate supervisor or manager will carefully review the employee's work performance record and general adaptability. A decision can be made at any time during the trial period to terminate (see note above), to extend the learning period, or to officially end the trial period and continue employment.

(The relevant portion of RMC's employee handbook, section 1-4, is attached hereto as **Exhibit B**.)

Almost immediately, it became clear that Complainant was not well-suited for the position, as she routinely failed to meet the pace that the job required. Despite several conversations with management about Complainant's poor performance, RMC did not notice any material improvement. Rather, Complainant demonstrated a defensive attitude and an inability to be taught or be corrected. The following examples are illustrative of Complainant's performance issues:

- On November 16, 2015, Ms. Perry and the Maintenance Supervisor spoke with the entire maintenance staff about moving with greater urgency and being independent on most tasks unless it became absolutely necessary to involve another team member. Of the three Maintenance Technicians present, only Complainant become defensive, and her tone demonstrated a lack of accountability.

- On November 19, 2015, a ceiling fan was broken in a unit to which Complainant was temporarily assigned. When asked how it happened, Complainant reported that it was too heavy and too high to be properly installed without assistance. Installing ceiling fans is generally not a task requiring multiple Maintenance Technicians. There is an expectation that Maintenance Technicians be able to move most items (appliances excluded) with little to no assistance.

- On November 23, 2015, the Maintenance Supervisor reported that—after Ms. Perry requested that they work independently—Maintenance Technicians were found working together in the same unit. Complainant denied that she was working together with other Maintenance Technicians. Management learned that Complainant improperly confronted the employee believed to have been in the unit with her because she thought that employee told Ms. Perry that he was helping her. This caused the other Maintenance Technician to feel that his job was in jeopardy. It was not Complainant's job to confront co-workers, and Ms. Perry admonished Complainant about the incident, explaining that it caused unnecessary strife on the team.

- On November 25, 2015, Ms. Perry spoke with Complainant in Ms. Perry's office, and asked Complainant if there was anything she needed, including training, in order for her to do her job. Complainant said nothing.

- On December 2, 2015, Complainant responded to an emergency call concerning a heater and, after two hours, was unable to resolve the issue after speaking on the phone with the Maintenance Supervisor. The following day, the supervisor visited the apartment to find that Complainant failed to push the valve completely in—causing the pilot to fail to ignite—after the supervisor instructed Complainant to ensure the valve was pushed completely in.

- Additionally, on December 2, 2015, Ms. Perry granted Complainant overtime to prepare a unit for move-in and the unit was not completed on time. Complainant worked on the unit for a grossly excessive number of hours, and yet the blinds were not installed, the door knobs were not completed and the locks were not changed. Complainant also required assistance with the furnace, the dishwasher and ceiling fan braces. Complainant also improperly called another employee—without Ms. Perry's permission—and offered that employee overtime. Complainant had no authority to do so, as overtime must be approved by a supervisor.

The above are but a few of the examples of Complainant's performance issues. In short, Complainant failed to demonstrate an ability to work independently on tasks which were expected to be completed by one Maintenance Technician. Complainant is a certified HVAC technician, but failed to complete a single work order where she did not have assistance. The continued reassignment of staff away from their assigned responsibilities placed a great strain on operations.

Accordingly, as it was evident that Complainant—still within her trial period—was not going to be an effective and reliable Maintenance Technician, Ms. Perry, in consultation with Human Resources, terminated Complainant's employment effective December 10, 2015.

## ARGUMENT

Complainant speculates that she was discriminated against because of her race and sex and retaliated against for complaining about alleged racial comments. These claims are baseless and should be rejected.

RMC did not discriminate against Complainant based on her race, sex or any other protected basis. RMC has a very diverse population of employees in its portfolio, including the Enclave. RMC does not discriminate based on any protected class. Rather, RMC terminated Complainant's employment for a legitimate non-discriminatory reason, *i.e.*, Complainant's abject failure to satisfactorily meet the requirements of her position during the company-mandated trial period. As detailed above, management had several conversations with Complainant over the course of her brief probationary period of employment concerning her deficiencies. Complainant showed no signs of improvement, and was therefore appropriately terminated within the probationary period.

Complainant's discrimination claims are further belied by the fact that Ms. Perry, herself an African-American woman, interviewed Complainant and participated in the decision to hire her, and also made the decision to terminate Complainant's employment *less than two months later*. It is therefore absurd to suggest (as Complainant does) that Ms. Perry would approve of the hiring of Complainant, only to decide *less than two months later* to terminate her employment because Complainant was an African-American woman and not because she was a poor performer. The Fifth Circuit has held that this situation "gives rise to an inference of non-discrimination" because it is illogical to assume that a decision-maker would recommend that an employee from a protected group be selected for a position merely to terminate her once she is on the job. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997); *see also Fitzpatrick v. Pontotoc Cty.*, 612 F. App'x 770, 776 n.5 (5th Cir. 2015); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (explaining that the "same actor doctrine" reasons that "from the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes ... only to fire them once they are on the job"). *See also Howard v. United Parcel Serv., Inc.*, 2011 WL 195682, at *9 (N.D. Tex. Jan. 18, 2011) (holding that same-actor inference applies to retaliation claims just as it does to discrimination claims).

Similarly, when the decision-maker in a discharge case is in the same protected class as the discharged employee—and here, both Complainant and Ms. Perry are African-American women—there is a presumption that unlawful discrimination is not a factor in the discharge. *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 744 (S.D. Tex. 2014); *see also Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996) ("[W]hen decision makers are all of the same protected class as the discharged employee, it is similarly less likely that unlawful discrimination was the reason for the discharge"); *Powell v. Delaney*, 2001 WL 1910556, at *9 (W.D. Tex. June 14, 2001) ("the Fifth Circuit Court of Appeals have held that "'proof that the decision-makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision'").

Finally, Complainant's retaliation claim is equally baseless. As set forth above, Complainant's termination did not result from any alleged complaints of discrimination or other race-based comments. Rather, RMC terminated Complainant's employment due to her failure to satisfactorily meet the requirements of her job during the company-mandated trial period. Moreover, during her employment with RMC, Complainant never once lodged an official complaint of race or sex bias (or any other form of bias) pursuant to RMC's complaint-reporting procedures. Nor did Complainant ever complain to Ms. Perry about discrimination or unfair treatment in the workplace.

As to the specific baseless allegations in Complainant's Charge, Ms. Perry denies that she ever directed, or even suggested, that Complainant refrain from entering through the front door of the leasing office. Indeed, Ms. Perry never instructed Complainant or any of her staff to only use the back entrance. Ms. Perry likewise denies the preposterous allegation concerning not hiring any additional black employees because they were "scaring the residents." She also denies making any reference or comparison of her name to that of a "white girl name." Moreover, Ms. Perry denies the allegation that she made comments to Complainant about Complainant's inability to perform jobs because they were "for men."

Norma Ruiz
July 15, 2016
Page 5

## CONCLUSION

Neither Title VII nor Chapter 21 of the Texas Labor Code is a vehicle for administrative second-guessing of business decisions, particularly where (as here) a Complainant comes forward with no evidence of discrimination or retaliation. Accordingly, for all of the foregoing reasons, Respondent Related Management Company, L.P. respectfully requests that the Commission dismiss Complainant's Charge.

Respectfully submitted,

Related Management Company, L.P.

By: _____
David M. Katz
Vice President, Employment Counsel

**ATTACHMENT 3**



BOARD CERTIFIED
LABOR AND EMPLOYMENT LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
ALSO LICENSED IN NEW MEXICO

HOLLY B. WILLIAMS
ATTORNEY AT LAW

August 19, 2016

VIA EMAIL TO Roxana.LaMotte-Archie@eeoc.gov
Roxana La Motte
U.S. Equal Employment Opportunity Commission
El Paso Area Office
300 East Main Drive, Suite 500
El Paso, TX 79901

Re: Jovita Duncan v. Related Management Company, LP
Charge No.: 453-2016-00920

Dear Ms. La Motte:

Thank you for the opportunity to provide this rebuttal to the position statement filed by Respondent Related Management Company, LP ("Respondent"). This rebuttal is based on investigation available to date, and further investigation and/or discovery may reveal additional information.

Respondent offers vague, subjective allegations to support its contention that Charging Party, a black/African-American female, was terminated due to inadequate job performance. No contemporaneous documentation has been provided of any of the alleged deficiencies because Charging Party was never informed that she was having performance issues nor did she receive any write-ups.

The following are Charging Party's responses to Respondent's specific alleged examples of performance issues:

- On November 16, 2015, Charging Party felt the meeting was positive and felt excited to improve the productivity and quality of the group's work individually and as a team. The allegation that Charging Party became "defensive" and that "her tone demonstrated a lack of accountability" is very subjective.

- The incident on November 19, 2015, is actually part of the basis for the allegations in the Charge that Ms. Perry started assigning jobs that required two people to be safe and made comments about the fact that Charging Party was female and could not do certain jobs. Charging Party was replacing a ceiling fan for an apartment upgrade. The apartment had cathedral (i.e., vaulted) ceilings which required a taller ladder. Charging Party asked Ms. Perry for assistance, specifically for someone to hold the ladder, because the ladder was not tall enough and Charging Party is only 5'2". Ms. Perry told Charging Party that she is supposed to be able to take down a ceiling fan on her own and that if it is too heavy because she is not strong enough as a female then she would

3731-001: 8011

have to call corporate to see what the weight limit is and get back to her once she found out about OSHA. Charging Party told Ms. Perry that she would try and do it by herself, and she dropped the ceiling fan. In the apartments without cathedral ceilings, Charging Party was able to change the ceiling fans easily on her own. Charging Party started feeling like Ms. Perry was giving her tasks she knew she could not do on her own or in a timely manner in order to harass her and/or get her fired.

- On November 23, 2015, Charging Party did not work with any other maintenance technicians. Roy Johnson, another maintenance technician, came to the apartment where Charging Party was working to borrow a tool. Ms. Perry asked Charging Party if Mr. Johnson came to her apartment. Charging Party told Ms. Perry that he had come to borrow a tool and that he did not help her with her work. Afterwards, Charging Party asked Mr. Johnson whether he had told Ms. Perry he had been helping her. He got upset, said no, and went to talk to Ms. Perry. Charging Party believes he was upset because at this point it started feeling like Ms. Perry was playing games, harassing them, and making them scared they would lose their jobs. Like Charging Party, Mr. Johnson is black/African-American.

- As far as the alleged November 25, 2015, incident, although Charging Party is not sure of the date, she remembers that when she was replacing faucets for the first time, it was difficult and taking a long time because the faucets were old and rusted. Maintenance Supervisor Paul Almquist came over to help her; he also had a hard time removing the faucets. Ms. Perry asked Charging Party if she needed training in order to do her job. Charging Party did not respond because she was upset that her performance and ability were being questioned over something she knew how to do, was extraordinarily difficult, and even Mr. Almquist had trouble doing.

- On December 2, 2015, Charging Party was the on-call technician and had to respond to an emergency call concerning a heater, specifically a valve needed to be replaced. She had trouble finding the right valve and called Mr. Almquist who told her where to find it. She successfully replaced the valve and informed Mr. Almquist that the heater was old and needed more work than just the valve. She requested that he check out the heater the next morning to make sure everything was in place correctly. Charging Party did not receive any complaints or hear otherwise regarding the heater. It took her about two hours to fix the heater.

That same day, Charging Party and another technician Evan McBee were trying to complete a make-ready for another apartment. Ms. Perry and Mr. Almquist approved overtime to finish the job. Charging Party was to replace the faucets and Mr. McBee was to put up the blinds and ceiling fans. They were both supposed to fix the door knobs. They worked on the unit from about 3pm until 7am the next morning. During that time, Charging Party had to resolve the heater mentioned above while Mr. McBee was to keep working on the unit. Charging Party is HVAC (Heating, Ventilation, and Air Conditioning) certified, but Mr. McBee is not. The next morning, Ms. Perry saw that the blinds had not been finished and blamed Charging Party, not Mr. McBee, for the blinds not being completed.

Interestingly, Respondent does not even mention the reason that Ms. Perry told Charging Party that she was fired: for not using "CLR (Calcium, Lime & Rust Remover) cleaner" on a bathtub. Charging Party did use the cleaner, and she told Ms. Perry that the bathtub needed resurfacing. These incidents show that Charging Party was subjected to a higher level of scrutiny compared to other male and/or non-black/African-American employees.

Respondent is not entitled to the "same actor" inference because Amber Perry, who made racial remarks to Charging Party, harassed her, and fired her, did not in fact hire her. Charging Party was interviewed and hired by two individuals named "Mike." We believe one to have been Mike Huebner, the Regional Manager of West Texas. We do not know that name of the other manager, but it is Charging Party's understanding that he was the Maintenance Supervisor for the West Texas region. When Charging Party was hired, she disclosed that she did not have any experience doing a "make ready" for apartments (i.e., preparing the apartment units for new tenants, including but not limited to, checking the apartment for damages and over all functioning). Charging Party was told this would not be a problem and that she would learn it on the job.

During her brief employment, Ms. Perry made frequent offensive racial and sexist comments toward Charging Party including telling Charging Party that she could not go through the front door of the leasing office, "like back in slavery." Charging Party did not report the comments because she was not allowed to carry her phone during work hours, it was difficult to get into contact with anyone above Ms. Perry, Charging Party was trying to keep her job, and she was fired out of the blue. The fact that Ms. Perry fired Charging Party within two months shows the degree of animosity that Ms. Perry harbored toward her. Even after termination, Ms. Perry continued to harass Charging Party by evicting her and authorizing the plumbers to break into her apartment without warning.

As the Supreme Court has recognized, "'Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human being of one definable group will not discriminate against other members of their group.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) quoting *Castaneda v. Partida*, 430 U.S. 482, 499 (1977). *See also Turner v. Hershey Co.*, 2014 WL 4983490 (S.D. Tex. 2014) (fact that African-American supervisor is in the same protected class does not necessarily mean that he did not discharge plaintiff for discriminatory reasons).

We respectfully urge that there is cause to believe discrimination occurred. Thank you for your consideration.

Yours very truly,

WILLIAMS LAW FIRM, P.C.

*Holly Williams*

By: Holly B. Williams

HBW:ngc

3731-001: 8011

**ATTACHMENT 4**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

207 S. Houston Street, 3rd Floor
Dallas, TX 75202-4726
Toll Free: (866) 408-8075
Potential Charge Inquiries: (800) 669-4000
TTY (214) 253-2710
FAX (214) 253-2720
Website: www.eeoc.gov

Dallas District Office
  San Antonio Field Office
  El Paso Area Office

Ms. Jovita Duncan
C/O Holly B. Williams
1209 W. Texas Avenue
Midland, Texas 79701

RE:    453-2016-00920
          Jovita Duncan v. Related Management Company LP

Dear Ms. Williams:

Thank you for the additional information you submitted in response to our preliminary assessment of the evidence. We want to assure you that all the evidence submitted by you and the employer has been considered in our review of your case.

After review of the additional information you provided, it is our assessment that further investigation is unlikely to result in a violation of the statutes we enforce. While we realize that you have firm views that the evidence supports your position you were discriminated against, the final determination must comport with our interpretation of the available evidence and the laws we enforce.

Therefore, please find enclosed the Dismissal and Notice of Rights that represents a final determination by the U.S. Equal Employment Opportunity Commission (EEOC) and describes your right to pursue the matter by filing a lawsuit within ninety (90) days of your receipt of the notice. If you fail to file a lawsuit within the statutory ninety-day period, your right to sue in federal court will expire and cannot be restored by EEOC. Additionally, you may wish to consider consultation with private counsel who specializes in employment law for an assessment of your circumstances and the likelihood of prevailing in any litigation you might initiate.

We hope this information is helpful to you.

Sincerely,

*Lucy V. Orta*    September 19, 2016
Lucy V. Orta            Date
Area Director
915-534-4502

Encl.: Dismissal and Notice of Rights (EEOC Form 161)

EEOC Form 161 (11/16)  U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Catherine Patton
3523 Sinclair Ave
Midland, TX 79707

From: El Paso Area Office
100 N. Stanton St.
6th Floor, Suite 600
El Paso, TX 79901

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| Amended 453-2017-00948 | Jesse R. Hernandez, Investigator | (915) 534-4197 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*(signature)*

Lucy V. Orta,
Area Office Director

(Date Mailed)

Enclosures(s)

cc: ATTN: Human Resources Director
RELATED MANAGEMENT COMPANY, LP
423 West 55th Street
New York, NY 10019

Holly B. Williams
Attorney at Law
WILLIAMS LAW FIRM, P.C.
1209 W TEXAS AVE
Midland, TX 79701

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*